May it please the Court, good morning, Your Honors. My name is Chad Carlock. I represent the appellants in this matter. There are many issues that are briefed in the papers, but the main point that I want to emphasize in my time, and I would like to reserve half of my time for rebuttal, is that the Court needs to reverse the orders of the District Court and the jury's verdict, because the discriminations policies and the practices and policies of the Admissions Office of the Veterans Homes of California, as they're administered, they discriminate against the disabled by excluding applicants with severe dementia, such as Dorothy Martin. That violates equal protection, the ADA, the Rehabilitation Act, and equal protection as a matter of law. The policies are clear. The record is clear that those policies were applied to Dorothy Martin, and the record is clear that those policies excluded Dorothy Martin. The Court need go no further than the defendants, the appellees' own documents in this case to establish their liability. The California You're not contending, are you, that there's a duty to take in all of the veterans that happen to be in California, regardless of resources? Because by definition, you're dealing with a group of potential users who are disabled in some respect. So what's wrong with a policy given that this is a rational basis analysis, what's wrong with a policy that says, well, what we're going to do is we will take, for example, with Alzheimer's patients, since we have to keep them from the time of admission throughout as they get to higher levels of care, we need to make sure that we have those beds available when those people start to we're going to have to restrict some people to let others in and ensure that they can enjoy the full advantage of what we provide. Well, to the extent that funding and resources are a consideration, and certainly, you know, in California, given the state of the budget, they are a consideration, the State must apply non-discriminatory criteria to do that. We don't want to exclude the decisions that are made. What does that mean in this context? Because what you're suggesting is that there's no ability on the part of the state to say, for example, we will be able to help more people if we take in those who are better able to care for themselves coming in, and that will be a more effective use of our resources. Is that discriminatory? Well, that's what they do to conserve resources, or at least that's what they say they do to conserve resources. Well, there's no evidence that they don't do that, is there? It's not just the disabled that are admitted. The home was designed for, the purpose of the home is to reward veterans for their service, aged and disabled veterans, by providing them services and care. One way they do that is in the veterans' homes. Another way that they do that is by having contracts with private facilities outside the veterans' homes. And in fact, they do that more cheaply. They don't have discrimination. They do take Alzheimer's patients. They don't discriminate against Alzheimer's. Some. Wait. I understand that. But to show discrimination, you have to show they were discriminated because of the disability. The disability here is Alzheimer's. And I'm very familiar with it in my own family, and I know many of us are. But they didn't discriminate against Alzheimer's per se. They simply said, we will take you as an Alzheimer's patient at a certain level and let you go through the system. We will continue to treat you as the Alzheimer's symptoms worsen and as you get to the point of increased dementia. It's just that in order to do the most good, we must have the Alzheimer's patient come in early. So it's not discrimination against any particular disability, is it? Well, that's where the arbitrariness of the standard comes in. If you happen to Why is that arbitrary? If you happen to have developed a disability before you applied, you are absolutely barred for membership if your needs are such that you don't, you're not self-sufficient. That's their standard. The lack of self-sufficiency is defined in the law as a disability. And it's that that the home uses as its bar. The result of your argument is that the state has to provide for everybody or nobody. Because if by definition you're dealing with a population that has a variety of disabilities or is expected to develop some, then if your argument is accepted, it's a completely all or nothing proposition and there can never be a distinction made on the basis of, you know, people's need for extended care. And it just will reduce, it seems to me, or eliminate the benefit. Well, two things, Your Honor. First of all, the law does require the state to provide equal and meaningful access to the program. And just as in the level case, what Equal access is the opportunity to apply. That's like saying the state university system has to accept everyone who applies. And obviously it doesn't, but it has to establish a standard that gives everyone an equal opportunity on the basis of permissible criteria. Why isn't this the same thing? There's a limited number of slots and the criteria are neutral, permissible criteria that don't single out Alzheimer's, that don't single out women or Hispanics or anybody in that kind of an impermissible way. They do. That is the stated purpose of the criteria. They do what? They do screen out on the basis of disability. And the record at 373 is the Veterans Board policy. The Veterans Homes will not admit applicants with dementia who require a secure environment. Yes, and wasn't it incumbent, those regulations were not new, upon Ms. Martin to have applied earlier? No, it's not. Couldn't she have applied earlier? Could she not have applied earlier? Can I have a yes or no? Yes, she could have applied earlier. Before she went into the most difficult stages of Alzheimer's. Well, in the early stages, what she had been told by representatives of the home was don't  apply anyway. I'm sympathetic with your argument that we should be doing something for the veterans. I've used many of the veterans' benefits. But if it's true that there's a limitation on the ability of California to supply medical benefits, if that's true, and if it's also true, which I think it is, you can convince me otherwise, that in the 1983 action, that disadvantage is not a suspect classification. Then you get to the place that the veterans have to determine a rational basis. So if all of those fall into place, it seems to me your argument is, has to show, that what they set up as a limitation, which they have to limit, the limitation they set up was not rational. Now, just focus on that. Why do you say that this was not rational? Yes, Your Honor. The — and we did brief the issue of the correct standard of appeal. But it's also our position that even under a rational basis standard, these regulations defeat the purpose of the policy, which is to reward veterans, aged and disabled veterans, with lifetime care. What these policies do is exclude from care homes those who most need care. No, they don't. Right. And they're saying this is a rational thing to do because they're saying if they're setting up long-term care and they can't handle those folks, they can just move into it. Now, is that irrational? Yes, for two reasons. First of all, dementia and other disabilities cannot be foreseen. A veteran, unless the state really wants to bankrupt itself, a veteran cannot be expected at 62 to immediately apply when they become eligible in terms of age for the veteran's home, just in case maybe down the road they develop some condition. That's rational. Then they have any senior judges. The State's actually — the State's actually costing itself more money by saying we will not care for you for the last four years of your life when you need a higher level of care, but if you apply early, we're perfectly happy to care for you for 30 years. And what happens when all of those people who came in earlier get to the point where they need this additional care? The Veterans Administration cannot kick them out and now has no beds because all of the — because there have been people who came in at this stage, unfortunately, of Ms. Martin. What do they do? Well, what happens — They have no place to put them and they have no care facility. What the State does in practice is holds beds that otherwise could go to eligible applicants like Dorothy Martin empty. That's not my question. My question is, assuming we change the policy, assuming the And everybody with dementia — and I'm not even getting to the three versus five ADLs. Are you saying that that's irrational, too? Yes, that that's — Any — so any criteria you're saying is irrational, which seems interesting, but in any event, but what do they do when they have a whole wealth of people who have been in the system since early on, they are now required to be maintained. They can't just be kicked out. They have no beds for them. What do they do? Assuming all those facts — Right. — the Department still has an obligation under the statutory entitlement to provide meaningful access to the program. In level — Wait a minute. Wait, wait, wait. They don't have beds. They don't have money. What do they do? They could — in the Association for Retarded Citizens case, the California case, what the Supreme Court said was the solution is not to reduce the entitlement. The solution is to go to the legislature to seek more money. And in this case, what the Department can and does do — We know where the legislature is right now on money. What the agency — Putting them in other private facilities is not economically feasible. It's actually — You're saying — and so it seems to me I'm having — I'm hard-pressed to understand your argument that by making differentiations in order to ensure that those people who are in the system will be cared for, it's irrational to say, look, we're going to have to make a cutoff somewhere. And where it is, is when you get to us, it's unfortunate. And there are cases that say sometimes it's unfortunate as to individuals. But you have to make the decision rationally for the greatest good. And isn't that what they've done here? No. You know, the — what the criteria do is to admit certain qualified applicants while refusing admission to other qualified applicants. The only basis for that distinction is whether or not that person is disabled and the degree of disability. And degree of disability is actionable. But, you know, your answers to Judge Chiavelli lead me right back to where I started. If all of these distinctions are irrational and impermissible and the only answer is more money, which is not going to be forthcoming, then the ultimate result is to close down all of these facilities because it's not possible to serve the entire population. Two things, Your Honor. First of all, it's actually — and the evidence in the record shows that it actually was cheaper to do the placements in the community as opposed to operating the veterans' homes, number one. And, number two, the statute already contains non-discriminatory criteria that they could use. The preferences, wartime veterans, Medal of Honor recipients first, then wartime veterans, then peacetime veterans. In the veterans, how many Medal of Honor recipients do you think there are? I believe at the Yountville home there's currently one. Okay. The next highest priority is wartime veterans, of which Dorothy Martin was one. The next two lower priority classes are peacetime veterans and spouses, assuming space is available. Now, because they were self-sufficient and not disabled, there were plenty of peacetime veterans and spouses admitted at the same time Dorothy Martin was excluded. I see I have about two minutes left, so I'd like to reserve that for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, my name is John Rucco. I represent the defendants, the appellees, the California Department of Veterans Affairs, and the individually named defendants. As the Court's aware, the California Department of Veterans Affairs is a state agency which, among other things, operates the Veterans Homes of California. It's a residential care facility for aged and disabled veterans. And it's funded by a combination of both federal and state monies, which is something I'm sure the Court is also aware. I want to stress the fact it's for aged and disabled. So our mandate is to provide for a diverse population of veterans. Does that mean that some people who really need it are going to be excluded for those who need it less? Is that what that means? It means that one has to allocate resources across a broad spectrum. Is that a yes or a no? It's not a question of needs that indicates whether you're admitted or not admitted. It's a question of priority. I understand. If you apply at a time where there's openings and your needs... I don't see how you can get around this, and I'd like you to confront it and tell me if I'm wrong, that the result of the policy that you currently have means that a person who needs the bed more is going to be excluded at times for people who need it less. That is inevitable unless you have limited funds. Okay. Then I'm not sure it's inevitable. I mean, there are ways around. You could have a situation where the people who need it most have it, and if you don't happen to be in the need, then you have to leave, and you have to get someplace else because we're going to take care of the veterans with the greatest need. That is a rational way. Okay. That's a rational way. For those of us that are in World War II, there's a lot of us coming along that are going to need the bed. Maybe I will tomorrow. Certainly. So the question is, there's probably more than one rational approach. Now, assuming that being disabled is not a suspect classification, and I'm making that assumption, is any rational basis good enough, or do you have to have the most rational basis to survive this challenge? Oh, well, the answer is clear. Any rational basis is enough. It's the rational basis test is an extremely deferential one, and it's not a question that you arrive at the best solution, but a solution that's reasonably related to the purpose. But I'd like to address, if I may, Your Honor, your question. Just let me follow up one question, then I'll leave you alone. So if I understand correctly, a rational basis would be okay, even though it's at the disadvantage of the veterans in most need, so long as it has some rational basis to some other policy that the Veterans Administration has adopted. It can be, Your Honor, yes. But may I address this? Your response to Judge Wallace's question confuses me a little bit. My understanding is, though, that whoever gets a particular bed at a particular level would have to need that bed. In other words, the one who comes in who has, let's say, early Alzheimer's would not be in the same bed as the one who has the late-stage Alzheimer's, right? They would just work their way up to that bed. In other words, they're not fighting for the same bed at the same time. No, not necessarily. Okay. I want to make sure I understood how it worked. The issue about finding the veterans with the greatest need, one of the things the Court needs to consider is that when a veteran makes a decision to apply to a veterans home, and at the time in question here, there were only three veterans homes. There was one in Chula Vista, in Barstow, and in Yountville. These individuals leave the communities in which they've established roots. They usually sell their homes. They leave their friends. They leave their family. And they come to the veterans home as a place of refuge, a rule that would say that they were always subject to expulsion if someone came along who needed the bed more than they did would create such disharmony and upset in the veterans community. It would be a benefit that they would always feel a little danger of having it removed from them. Would it be rational? That is, to provide more benefits for the veterans most in need, would that be a rational basis? It would work against the policy that you've adopted of bringing this into a home that they're going to save. That wasn't my question. My question is, is it a rational basis to provide the facilities for those veterans who are most in need? I think it would pass the rational basis test. I think it would be a poor policy. OK. So then your argument is, that is a rational basis. But so is what we're doing. And as long as we're the government involved, it passes muster if we have any rational basis. I think that's correct, Your Honor. That's a correct statement of the law, is that we don't substitute our judgment for the judgment of the other individuals as long as it's a reasonable approach. It doesn't have to be the best approach. It need only be a reasonable approach. Earlier, you said that the statute and the purpose is to deal not only with disabled veterans, but also with aged veterans who may have no disability other than age itself. Is it permissible to exclude a person with a disability in favor of a person who is simply old? And if so, are there any special circumstances that have to surround that, such as the priority for wartime veterans? Well, the problem with that is, it would only handle a person with a disability who is First of all, it assumes the fact that an aged person is not also disabled. The definition of disability Well, there are people in these homes that don't have disabilities or not yet, anyway. That is true. But there are many people who are aged and who are disabled. There are many people who are disabled that are being treated I'm trying to get an answer to the more theoretical question, because there are people who enter without disabilities. Can they be preferred over people who have disabilities? And if so, on what ground? They would not be if you were going to fulfill the mandate of the statute that the home is for aged and disabled veterans. Doesn't this come to the same point I was raising earlier, that a person who is not heavily disabled would be at a different level of care? It's not the same bed. No. No, I'm not right? No, you're absolutely right. They would be in a domiciliary setting, which is a very, it's similar to an adult group home, where very few services are provided. Basically, they're given a place to stay and their meals. Okay? And at a much lesser expense than the people at the higher levels of care. One thing I'd like to address with the court is we're talking about a fixed resource, and that the need exceeds the resources. In the year that Dorothy Martin applied to the veterans' home, there are about 180 skilled nursing beds in the entire veterans' home system. There's also 2.8 million veterans. Okay? It was just, it's just not possible to provide for all those veterans. The statute also that authorized this envisions the fact by its very, by the fact that it sets a priority system that Mr. Carlock mentioned. Is that figure that you gave us of veterans, that does not include spouses of veterans? That's just veterans alone, Your Honor. If, to the extent they're married, it's higher than that? Probably so, yes. If I can, unless my colleagues want to pursue this further, I had one other question on a totally different area. And that is on the ADA and RA claims of Mary Martin. Now, it may be moot in light of the jury's verdict, but there was a conclusion that Sheila lacked standing on, I'm not talking about the constitutional claim, I'm talking about the ADA and RA, for her expenses for Dorothy Martin. And while I understand Blanchard, et cetera, I'm a little troubled by the notion that if the parent takes care of the child, there is a claim. But if the child takes care of the parent, there's not a claim. Who else is going to take care of Ms. Martin here? Well, there are other resources available in the community as well, Your Honor. I'm saying as a, and I recognize there's sort of a moral obligation, but are you saying that there must be a legal requirement, or do you perceive the case as saying there must be a legal requirement before the person who has actually made the expenditures, and assuming they were reasonable to take care of this veteran, may have a claim? I don't know if that's the full extent of the analysis, Your Honor. The point is that Mary Martin was actually claiming in her representative capacity in this instance, in any event, for her mother's injuries. So it would have almost been duplicated in any event. But I'm saying... She doesn't have a discrete need or... You're saying everything came out of the estate. Yes, it would have come out of her estate. Everything did come out of the estate, you're saying? Yes. She had no separate expenses? I don't know that for a fact, Your Honor, but if she did, they were probably minimal. And so she did not have a discrete harm. And there's also the theory... If she had expenses, why did she not have a discrete harm? Assuming, and again, it may be moved in light of the verdict, but the point is, are you saying that if she had a discrete harm, discrete payment out of her own pocket and out of the estate of her, that that would not be recoverable as a matter of law? Well, if we think about it, if we extend it that far, then anyone who expended time, energy, or money in caring for an individual... That's a slope argument. But, I mean, it's been recognized that a parent's payment for the child, why not a child payment for the parent? This isn't exactly like some third-party intermeddler coming in here. No. No. I understand it isn't. But at what point do we draw the line? If someone, out of the goodness of their heart, which is actually... Mary had no legal obligation to care for her mother. If someone expended monies to care for an individual, can they, too, bring a claim under the ADA? Well, I mean, certainly the relationship of parent and child, it's far different than saying someone, a third party who comes in. I'm not sure that's an analytical approach other than the old floodgate argument. It's what you're making. And I gather from your answer, you're making the argument... How about a... Excuse me. I gather from your answer, you are answering my question by saying there has to be a legal obligation. Yes. Okay. Thank you. I'd like to treat, if I might, or make sure the Court is aware of the fact that when the consideration is given to an individual as to entry into the home, it's never made on the basis of diagnosis. It's made on the basis of care needs and availability of space where that individual's care needs reside. And it can never be, if you are a provider of care, it can never be an illegitimate motive to inquire as to the care needs of the individual you service. In order... Because it would be irrational to accept people for admission that you could not care for. So the notion that by analyzing their care needs that one is discriminating on the basis of disability, it doesn't make sense in this context. Well, but you have the capacity to care. I mean, the ability to care for her, because obviously anybody who came in early and then developed full-blown Alzheimer's, you could care for. So it isn't an issue that you had no ability to care for Ms. Martin. You're simply saying the decision was made not to accept people at that late stage that you have room for the people that are coming through. Not necessarily. It's not a question of what stage she applied. It's a question of what her care needs were and whether there was room at the place where she needed care. The uncontroverted evidence at trial by all the medical providers was at a minimum she needed skilled nursing care. And in fact, her own doctor opined that she really needed more than skilled nursing care. She needed a special Alzheimer's dementia unit, a secure ward. And that was a combination of factors, one of which was the fact that she was quite ambulatory and she had no conception of time or space. But wouldn't that be true of somebody who came in at an early stage of Alzheimer's or even before onset? And ultimately wound up with those same symptoms. You wouldn't kick them out, would you? We don't, Your Honor. We make do with them. You would be able to care for them. Yes. Those people we care for. Okay. Because we have room at the time that they apply and then they move through the system. One thing also that the Court should be aware of is at the same time that Mary Martin applied, I mean that Dorothy Martin applied, another veteran applied who had Alzheimer's but could be cared for at a lower level of care where there were openings. Therefore, she was admitted. She progressed through the system. We did not have room for Dorothy Martin. Also at the time that Dorothy Martin applied, there were 53 other disabled individuals on the waiting list for SNF nursing care. They were ahead of her. We have no basis of choosing her over those individuals. That would have been a violation of equal protection and discriminatory. Thank you, counsel. Your time has expired and we understand your position. Mr. Karluk, you have some rebuttal. Yes. Thank you, Your Honors. I'm going to try to cover four points in two minutes. First of all, on the need to exclude or the cost defense, this Court and other courts in the United States Supreme Court have been very clear that, especially in the ADA and the RA, cost is never a legitimate basis to exclude the disabled. The Lovell case specifically said that when the benefit the state provided was no benefit at all, then the necessity defense was not available in terms of a facial discrimination. In Shapiro v. Thompson, the United States Supreme Court said the state may not preserve the fiscal integrity of its programs by invidious distinctions between its citizens. In Plyler v. Doe, the state said a concern for preservation of resources standing alone can hardly justify the classification used in allocating those resources. The state must do more than justify its classification with a concise expression of an intention to discriminate. Secondly, with respect to beds themselves, folks who apply when they are self-sufficient are put into a bed at a lower level of care. So they do not take up a bed in the skilled nursing facility, except that they do, because the way that the program is operated is that in order to ensure lifetime care, what the homes do is reserve beds at higher levels of care. They keep up to a quarter or more of their skilled nursing beds funded, staffed, and empty, just in case. Counsel just said that at the time of Dorothy Martin's application, there were 53 disabled folks on the waiting list ahead of her who needed skilled nursing. She would have been the 54th. Well, there were 66 empty beds at that time. Counsel, your time has expired. Thank you very much. We appreciate the arguments of both counsel, and the case just argued is submitted. We will take about a five-minute break. All right.
judges: Wallace, Pregerson, Graber